# Zimmer *v.* Central Accident Insurance Company, Appellant.

*Insurance—Accident insurance—Life insurance—Application attached to policy—Act of May 11, 1881, P. L. 20.*

A policy of insurance which insures not only against accidents, but against loss of life as well, when caused by accident, is a life insurance policy within the meaning of the Act of May 11, 1881, P. L. 20, which provides that the application for the policy shall not be received in evidence unless attached to the policy. Pickett v. Pacific Mut. Life Ins. Co., 144 Pa. 79, followed.

Insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon loss of life.

A policy of life insurance had a blank form of application printed on the back. The following printed words appeared extended alongside the blank on the back of the policy: "I accept this as a copy of my application, but I agree that the original shall be admitted as the correct application if copy va-

ries therefrom." What appeared printed on the back was not a copy of the application filed by the insured. It was not shown that the insured saw the pretended copy of the application on the back of the policy. *Held*, that the words printed on the back of the policy were immaterial, and could not be construed as a waiver by the insured of the provisions of the act of May 11, 1881.

MITCHELL, C. J., dissents.

Reargued Oct. 26, 1903. Appeal, No. 79, Oct. T., 1901, by defendants, from judgment of C. P. No. 3, Allegheny Co., May T., 1899, No. 228, on verdict for plaintiff in case of L. F. Zimmer v. The Central Accident Insurance Company of Pittsburg. Before MITCHELL, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Assumpsit on a policy of accident insurance. Before Mc-CLUNG, J.

The facts are stated in the opinion of the Supreme Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $3,435. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Homer L. Castle*, with him *J. A. Langfitt* and *Stone & Stone*, for appellant.

*J. T. Buchanan*, with him *D. Z. Starr* and *J. M. Garrison*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 4, 1904:

This suit is on a policy of insurance issued by the Central Accident Insurance Company, of Pittsburg, Pa., to L. F. Zimmer. For accidental injuries not resulting in death certain payments were to be made to the insured; and, in case of death resulting from them, the sum of $3,000 was to be paid to Mrs. L. F. Zimmer, if she should survive him. The policy was issued February 9, 1898, and the insured was accidentally drowned on or about September 15, 1899, while on a passenger boat in Alaska. It is not disputed that the cause of his death was within the terms of the policy.

On the trial of the case, the court below, under exception by

plaintiff, declined to allow the policy to be received in evidence unless the application upon which it was issued was also offered by her.   The ruling of the trial judge was, " I will have to hold that the act of 1881 does not apply here, and therefore I will exclude this policy unless it is accompanied by the application."   Thereupon the plaintiff offered what purported to be the original application.   No correct copy of it had been attached to the policy.   Without the application which the plaintiff was forced to offer, she would have been entitled to a verdict, if she had furnished the proper death proofs to the insurance company, as the jury found she had.   The application contained the following: " I have not in contemplation any special journey, nor any hazardous undertaking except as herein stated."   The blank space following this was not filled up.   It nowhere appears in the application that any special journey or hazardous undertaking was contemplated by the insured, but it was admitted on the trial that, at the time it was signed, he did have in contemplation the hazardous trip to Alaska.   The plaintiff undertook to show that this had been omitted from the application by fraud, accident or mistake, and the question whether it should be reformed by having this material fact read into it was submitted to the jury.   Whether, under the testimony offered by the plaintiff, that question ought to have been submitted becomes immaterial, in view of what must be regarded as error by the court in compelling the production and offer of the application.

The Act of May 11, 1881, P. L. 20, provides " that all life and fire insurance policies upon the lives or property of persons within this commonwealth, whether issued by companies organized under the laws of this state, or by foreign companies doing business therein, which contain any reference to the application of the insured or the constitution, by-laws or other rules of the company, either as forming part of the policy or contract between the parties thereto, or having any bearing on said contract, shall contain, or have attached to said policies, correct copies of the application, as signed by the applicant, and the by-laws referred to ; and, unless so attached and accompanying the policy, no such application, constitution or by-laws shall be received in evidence, in any controversy between the parties to, or interested in, the said policy, nor

shall such application or by-laws be considered a part of the policy or contract between such parties." The court below apparently followed the opinion of ACHESON, J., in Standard Life and Accident Ins. Co. v. Carroll, 86 Fed. Repr. 567, in which it was held that, as the legislature, by the Act of May 1, 1876, P. L. 53, classified insurance companies into four classes, (1) to make insurance against fire and marine risks ; (2) to make insurance upon the lives of individuals ; (3) to make insurance upon health and against accidents, and (4) to insure live stock, the words " all life and fire insurance policies upon the lives or property of persons," as used in the act of 1881, mean policies issued by companies of the first two classes under the act of 1876 ; and, as the policy in the present case was issued by a company of the third class, it is not within the provisions of the act of 1881. The classification of the act of 1876 is of companies ; that of 1881 is of policies. And why is not the present policy a life insurance policy? It insures not only against accidents, but against loss of life as well, when caused by accident, and is it any less a life insurance policy because its indemnity for loss of life is confined to death from accident? One of the promises of the company is, that it will pay a weekly indemnity or certain fixed sums for specific injuries resulting from accident and not followed by death. Another is, that it will pay a fixed sum to a named beneficiary if the injured insured dies and his death results solely from the accident. What is this but insurance on life, limited, to be sure, to death from one specific cause? In a well considered case—Logan v. Fidelity and Casualty Co., 146 Mo., 114 * it is most aptly said : " When a policy covers loss of life from external, violent and accidental means alone, why is it not insurance on life? Such a provision incorporated in a general life insurance policy admittedly would be insurance on life, then why less insurance on life because not coupled with provisions covering loss of life from usual or natural causes as well? . . . . The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the contract or policy a particular designation in the business or insurance world, will not in the least divest

---

\* Also reported 47 S. W. Repr. 948.—Reporter.

the contract or policy of its chief character, of insurance on life, or make the contract other than life insurance. The promise to pay a weekly indemnity, by an insurance company, in the event the insured receives an injury from an accident not resulting in death, does not change the character of the agreement of the policy to pay a certain other sum when the accident results fatally, which is life insurance from accidental causes, as the promise to pay a certain stipulated sum to the insured (now contained in many of the policies issued by what is known as old line life insurance companies) when the insured attains a given age, or in a definite specified time, and if, before the insured arrived at the age designated, or before the time fixed for its certain payment, he shall die from any cause, accidental or otherwise, to pay his legal representatives or some one named in the policy as beneficiary the amount stipulated, is none the less life insurance because coupled with an investment or bond feature, not found in what is commonly known as a straight life insurance policy. The calling of a contract of insurance, an accident, tontine or regular life policy, or for that matter, by any other appellation that may be adopted for business or conventional uses of classification, cannot make a policy containing an agreement to pay to another a sum of money designated upon the happening of an unknown or contingent event depending upon the existence of life, less a policy of insurance on life. Insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon loss of life."

Of the act of 1881 it is said, in New Era Life Association v. Musser, 120 Pa. 384, "It is a wise and beneficent act, founded upon sound reasons of public policy;" and later, in Pickett v. Pacific Mut. Life Insurance Company, 144 Pa. 79, which was a suit on a policy insuring against death resulting from accident, we said, in speaking of the provisions of the act of 1881, and in deciding that the application ought not to have been received in evidence against plaintiff's objection, because neither it nor a copy of it had been attached to the policy, " The act was passed in the interest of honesty and fair dealing, and its provisions should be strictly enforced. We have no doubt they apply to such companies as the defendant." We now repeat these words as the law in this case.

On the back of the policy there was printed a blank form of application. As a blank, it is not even a copy of the one that was filled up for the signature of the insured, and, as already stated, it is not pretended that what appears on the policy filled up is a correct copy of the application as filled up and signed by Zimmer. The following printed words appear extended alongside the blank on the back of the policy : " I accept this as a copy of my application, but I agree that the original shall be admitted as the correct application if copy varies therefrom ;" and upon these words appellant relies as a waiver by the insured of the provisions of the act of 1881. This is a bald attempt by the insurance company to evade the act. Its requirement is that a correct copy of the application is to be attached to the policy, and it is as easy to do so as to attach an incorrect one. Of the act we have repeatedly said : " It affords protection to persons who insure their lives or property, and can injure no company conducted upon honest business principles :" New Era Insurance Association v. Musser, supra. This was repeated in Fire Ins. Co. v. Oberholtzer, 172 Pa. 223 ; Morris v. Life Assurance Co., 183 Pa. 563, and Fisher v. Life Association, 188 Pa. 1 ; and, in Norristown Title, etc., Co. v. John Hancock Mut. Life Ins. Co., 132 Pa. 385, it was held that the act of 1881 is intended to impose a duty upon insurance companies and to protect the insured. Speaking of the reason for its passage, PAXSON, C. J., said : " It had often happened that upon the trial of a case an insurance company would offer a by-law, or the application of the insured, in evidence, for the purpose of impaling the plaintiff upon some technical point. The application, when made, is filed with the company, and when the assured receives his policy he often puts it away, and in time forgets what he had stated in his application. The act of 1881 was passed to compel the company to attach the application to the policy, and upon its failure to do so it cannot be received in evidence." Such an evasion of the act as is attempted here would turn it from protection into a trap for the unwary and unsuspecting insured. It does not appear that Zimmer ever saw the pretended copy of the application on the back of the policy, for it does not appear that he ever saw the policy itself ; but, if he had seen it, and it had been delivered to him, it cannot be said as a matter of law that, in anticipation of a fraud

upon the part of the company, there was any absolute duty imposed upon him to read his policy when he received it : Kister v. Insurance Co., 128 Pa. 553.   He had a right to assume, without reading it, that, as an honest insurance company, the appellant had observed the law passed for his protection by attaching or indorsing a correct copy of the application ; but, if he had seen and handled the policy, he found nothing on it committing him or his beneficiary to the substitution of an incorrect for a correct copy of the application.   Not having committed himself to the words, " I accept this as a copy of my application, but I agree that the original shall be admitted as the correct application if copy varies therefrom," no importance can be attached to them.   They amount, at most, to but an implied request by the company that he would agree to its attempt to evade the law.   Whether he could waive his right to the protection of the act of 1881 is not a question to be now determined, because he did not waive it.

As the only defense that could have availed the defendant arose from the application which it was the right of the appellee to have excluded, the judgment on the verdict, in her favor, is affirmed.

MITCHELL, C. J., dissents.